No. 52,646

MESA PETROLEUM COMPANY, *Appellant,* v. THE KANSAS POWER AND LIGHT COMPANY, *Appellee.*

(630 P.2d 1129)

Opinion filed July 17, 1981, clarifying opinion filed June 10, 1981, and denying rehearing.

*Richard C. Byrd* and *Walker A. Hendrix,* of Anderson, Byrd & Richeson, of Ottawa, *E. F. Russell,* of Ulysses, and *Barry Cannaday* and *Jeffrey G. Shrader,* of Amarillo, Texas, were on the brief for the appellant.

*Jerome T. Wolf, Basil W. Kelsey* and *Terry W. Schackmann,* of Spencer, Fane, Britt & Browne, of Kansas City, Missouri, *Gene H. Sharp,* of Vance, Hobble, Neubauer, Nordling, Sharp & McQueen, P.A., of Liberal, *David S. Black,* of Topeka, and *James L. Grimes, Jr.,* of Cosgrove, Webb & Oman, of Topeka, were on the brief for the appellee.

*A. J. Schwartz,* of Morris, Laing, Evans, Brock & Kennedy, of Wichita, and *C. J. Roberts, Larry Pain,* and *Jennifer A. Cates,* of Bartlesville, Oklahoma, were on the *amicus curiae* brief for Phillips Petroleum Company.

*Charles J. Woodin,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, was on the *amici curiae* brief for Petroleum, Inc., Pickrell Drilling Company, McCoy Petroleum Company, and KIOGA.

*John E. Robertson,* of Denver, Colorado, and *Jack D. Sage* and *Richard Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, were on the *amicus curiae* brief for Mobil Oil Corporation.

*R. H. Landt,* of Denver, Colorado, and *Glenn D. Young, Jr.,* of Gott, Young & Bogle, P.A., of Wichita, were on the *amicus curiae* brief for Amoco Production Company.

*Joseph W. Morris,* of Houston, Texas, and *John F. Jones,* of Ottawa, were on the *amicus curiae* brief for Shell Oil Company.

*Thomas A. Loftus, III,* of Houston, Texas, and *Winton A. Winter, Jr.,* of Stevens, Brand, Lungstrum, Golden & Winter, of Lawrence, were on the *amicus curiae* brief for Gulf Oil Corporation.

The opinion of the court was delivered by

FROMME, J.: Mesa Petroleum Company, appellant, filed a Motion for Rehearing in this case. Various other gas companies as friends of this court sought and obtained permission to file briefs in support of appellant's Motion for Rehearing. Their concerns are twofold: first, they are concerned with certain terminology used in the original opinion, and second, they contend the ultimate decision of this court was erroneous. The Kansas Power

and Light Company responded to these concerns urging that rehearing be denied and our opinion be confirmed.

In the original opinion we held (1) the indefinite price escalator clause contained in the gas purchase contract between the parties was not triggered by enactment of the Natural Gas Policy Act of 1978 (15 U.S.C. § 3301 *et seq.* [1979]), (2) the contract price was not escalated, and (3) the attempted termination of the contract by Mesa was ineffective.

It is contended by movants that our opinion went beyond those holdings and is, in fact, contrary to the holding in *Pennzoil Co. v. Federal Energy Regulatory Com'n,* 645 F.2d 360 (5th Cir. 1981). We do not agree. The issue in *Pennzoil* was:

"May 'area rate clauses' in existing interstate gas purchase contracts escalate the contract price to the maximum lawful price provided in the Natural Gas Policy Act of 1978?" p. 365.

The circuit court stated:

"The text of the statute itself, its legislative history, and the structure and policy of the NGPA do not preclude area rate clauses from escalating the interstate contract price to the maximum lawful NGPA price. *Nor does it, on the other hand, require such escalation.*" p. 372. Emphasis supplied.

Referring to the setting of ceiling prices discussed in Section 105(b)(1) the court pointed out:

"If, on the other hand, the [contract] price on November 9th was less than section 102, under section 105(b)(1) the maximum lawful price is the current price provided for under the terms of the contract as long as it does not exceed the section 102 price. Therefore, in the latter case, the intrastate contract price may escalate from its November 9th level to the section 102 level, *provided that the contract has a sufficient escalation mechanism.*" pp. 374-75. Emphasis supplied.

As we interpret the N.G.P. Act it does not preclude escalation of prices under contract clauses up to N.G.P. Act ceiling prices. On the other hand, contrary to the assumption by Mesa, the mere enactment of the N.G.P. Act did not activate price escalator clauses, such as the one in the present case, so as to escalate prices to the N.G.P. Act ceiling levels.

We adhere to our original decision that the price of gas under the terms of the contract between the parties did not escalate to the N.G.P. Act ceiling price merely because the N.G.P. Act was passed and became law. The contract provides for escalation if and when a govermental authority shall "prescribe by law" any price which is higher. Any escalation in price under the contract

is to take effect as of the date the authority establishes the regulated price.

Under the N.G.P. Act no regulated price is established. With the change in the law from regulated pricing under the Natural Gas Act to deregulation under the N.G.P. Act by setting ceiling prices, a different concept appeared. Prices were not prescribed by law. They were permitted to escalate under the terms of the various contracts not to exceed certain ceiling prices provided for in the N.G.P. Act. Provisions in these contracts for definite and indefinite escalation of prices and for redetermination of prices by later agreement are not nullified by the Act. However, these are limited by the terms and conditions agreed to by the parties in the contracts. In our present case, the contract as drawn by the parties did not provide for payment of the highest price allowed by law and this court will not rewrite the contract to authorize that result.

Accordingly, we decline to grant a rehearing; the original opinion of the court is clarified as set forth herein. We adhere to the original opinion except as herein clarified.